1   STEVEN L. HAMMOND (State Bar No. 220521)
2   PETER J. PARISOT (State Bar No. 214622)
    HAMMOND LAW
3   One Ferry Building, Suite 350
    San Francisco, CA 94111
    Telephone:    (415) 955-1915
4   Facsimile:    (415) 955-1976

5   Attorneys for Plaintiff
    GREGORY SHADE
6

7

8                   UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  GREGORY SHADE,                    CASE NO.   CV 08    3471

12              Plaintiff,
                                      COMPLAINT FOR COPYRIGHT
13       v.                           INFRINGEMENT, INJUNCTION,
                                      SEIZURE, IMPOUNDMENT AND
14  DANIEL PATRICK GORMAN, individually RETURN, ACCOUNTING TO RECOVER
    and doing business as CHARLIE SEVEN ROYALTIES AND PROFITS, UNJUST
15  FILMS, LLC, FRAMEBIRD MEDIA, CHIP  ENRICHMENT, BREACH OF
    R. BEASLEY, and ANDREW ELLIS,     CONTRACT, CONVERSION,
16                                    VIOLATION OF COMPUTER FRAUD
                Defendants.           AND ABUSE ACT AND REPLEVIN
17

18

19

20

21

22

23

24

25

26

27

28

HAMMOND LAW
One Ferry Building, Suite 350
San Francisco, California 94111

Plaintiff Gregory Shade ("Plaintiff") hereby alleges as follows:

## JURISDICTION AND VENUE

1.    <u>Jurisdiction</u>.  This action is brought, and jurisdiction lies within this court, pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in this matter in that Plaintiff seeks damages against the Defendants named herein under Section 501 through 505 of the Copyright Act of the United States, 17 U.S.C. §§ 101 *et seq*.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the controversy exists between citizens of both California and New Mexico.  Furthermore this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1338(a) and 1338(b).    Finally, this Court has supplemental jurisdiction under the principles of pendent jurisdiction as codified in 28 U.S.C. § 1367.

2.    <u>Intradistrict Assignment</u>.   As the actions that gave rise to this controversy took place primarily in the counties of Sonoma and San Francisco this action shall be assigned to the San Francisco Division.

3.    Venue lies within this district pursuant to 28 U.S.C. § 1391(b)(1) as Defendant Daniel Patrick Gorman ("Gorman") resides in this district; pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims alleged herein occurred in this district; and pursuant to 28 U.S.C. § 1391(c), as Framebird Media is subject to personal jurisdiction in this district as its business address was within this judicial district at the time the action commenced.

## THE PARTIES

4.    Plaintiff is and at all times material herein has been an individual residing in the State of New Mexico.

5.    On information and belief, Plaintiff alleges that Defendant Gorman is and at all times material herein has been an individual residing in Occidental, California.

6.    On information and belief, Plaintiff alleges that Defendant Charlie Seven Films, LLC ("Charlie Seven Films") is and at all times material herein has been a fictitious business name under which Defendant Gorman conducts his business.  Defendant Charlie Seven Films, LLC, is not registered as a business entity with the State of California or the State of New Mexico.

7.    On information and belief, Plaintiff alleges that Defendant Framebird Media

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

1

("Framebird") is and at all times material herein has been a fictitious business name under which Defendants Gorman, Beasley and Ellis operate their business. Defendant Framebird Media is not registered as a business entity with the State of California. However, at all times material herein Defendant Framebird has held itself out as a business entity located in Sebastopol, California.

8.    On information and belief, Plaintiff alleges that Defendant Gorman is and at all times material herein has been an owner, officer, director, partner, or member of Framebird.

9.    On information and belief, Plaintiff alleges that Defendant Chip R. Beasley ("Beasley") is and at all times material herein has been an owner, officer, director, partner, or member of Framebird. On information and belief, Plaintiff alleges that Beasley materially took part in the creation, production and/or editing of the infringing documentary film with knowledge of the fact that Defendants' lacked Plaintiff's authorization and consent to use Plaintiff's copyrighted source materials.

10.    On information and belief, Plaintiff alleges that Defendant Andrew Ellis ("Ellis") is and at all times material herein has been an officer, director, partner, or member of Framebird. On information and belief, Plaintiff alleges that Ellis materially took part in the creation, production and/or editing of the infringing documentary film with knowledge of the fact that Defendants' lacked Plaintiff's authorization and consent to use Plaintiff's copyrighted source materials.

11.    On information and belief, Plaintiff alleges that at all times material herein each of the Defendants was the agent of the other Defendants, and in doing the things herein alleged, was acting within the course and scope of such agency.

## ALLEGATIONS COMMON TO EACH CAUSE OF ACTION

12.    Plaintiff is the creator and owner of copyrighted video footage and still photographs obtained during his time in Afghanistan, Uzbekistan, Tajikistan, Turkmenistan and Pakistan in addition to other Central Asian countries immediately following the events of September 11, 2001. Certain portions of the video footage were filmed by Melik Kaylan, who has assigned all copyrights in the footage to Plaintiff. Plaintiff's intellectual property rights in the raw video footage ("raw video footage") are the subject of a registered copyright as set forth below. All footage was obtained at a risk of great personal peril and at significant financial expense to Plaintiff. Plaintiff estimates that he spent over $50,000 in out of pocket costs to obtain such video footage and still photographs

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

1       13.    Plaintiff's story of his work in Afghanistan and other Central Asian countries was so

2   noteworthy that the CBS Corporation news program, *60 Minutes*, broadcast a segment featuring

3   Plaintiff and his work, fighting terrorists, on national television.  Moreover, Plaintiff has been profiled

4   in a number of prominent newspapers and journals ranging from the *New York Post* to *The Wall Street*

5   *Journal* for his courageous efforts in the war on terror and his attempts to bring Osama bin Ladin to

6   justice.

7       14.    In light of the public interest in his story, Plaintiff desired to turn his footage into a film

8   or other format for future commercial use.  Plaintiff entered into an agreement with Defendant Gorman

9   by and through Defendant Gorman's entity, Charlie Seven Films, in 2003 to produce a documentary

10  film using Plaintiff's raw video footage.  This agreement was later reduced into writing on or around

11  March 15, 2003.  A true and correct copy of the Letter of Intent is attached hereto as **Exhibit A**.

12      15.    Plaintiff initially hired and paid Defendant Gorman to compile and edit the raw video

13  footage provided by Plaintiff into a shorter version for other uses.  In scope and course of this

14  engagement, Plaintiff allowed Defendant Gorman access to Plaintiff's raw video footage for Defendant

15  Gorman to compiled, as a work for hire, an edited version that was approximately four hours in length

16  ("compiled video footage").

17      16.    In the course of this engagement, Plaintiff allowed Defendant Gorman access to

18  Plaintiff's still photographs which were taken contemporaneously with the raw video footage for use in

19  the proposed documentary film.

20      17.    Specifically, the Letter of Intent states that Plaintiff authorized "Charlie Seven Films,

21  LLC (Daniel Gorman) to make use of [Plaintiff's] appearance and to use all video footage and stills

22  provided…" for the proposed documentary film.  Furthermore, the Letter of Intent states that

23  "[c]ontent will be mutually agreed upon by Greg Shade and Daniel Gorman, with final approval by

24  both parties."

25      18.    Over the next several months, pursuant to the parties' agreement, Defendant Gorman

26  proposed various plot and content scenarios, including one entitled "*For Love Of Country*." However,

27  for various legitimate reasons, Plaintiff was dissatisfied with each and every scenario presented by

28  Defendant Gorman.

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

3

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

19.    Ultimately, Plaintiff and Defendant Gorman were unable to reach an agreement on the final content of the proposed documentary film.

20.    In or about April 2003, Plaintiff terminated all of his business dealings with Defendant Gorman.

21.    In or about April 2003, Plaintiff demanded the return of all copies of the of raw and/or compiled video footage as well as all copies of the still photographs and thereafter withdrew his authorization for Gorman and/or Charlie Seven Films to use such materials.

22.    In response to such demand, Defendant Gorman turned over a number of digital videodisks, which he represented contained the entirety of Plaintiff's video footage. Plaintiff, relying on Defendant Gorman's representations, did not learn until January of 2008 that the digital videodisks contained only the four hours of compiled footage. Unbeknownst to Plaintiff, Defendant Gorman had surreptitiously retained copies of the raw video footage, the compiled and edited footage and still photographs without Plaintiff's authorization or consent.

23.    Around the same time, Defendant Gorman requested Plaintiff's permission to use Plaintiff's personal computer to finish the transfer of files as Defendant Gorman represented that his computer was no long working. As a result, Plaintiff gave Defendant Gorman permission to enter Plaintiff's vacation home to utilize his personal computer. During such time, Defendant Gorman removed property and/or copies of property belonging to Plaintiff from the home without Plaintiff's authorization and consent. Specifically, Gorman removed computer files from Plaintiff's computer, as well as confidential, proprietary documentary and electronic information relating to Plaintiff's business affairs and confidential work in Afghanistan, and copies of all writings and agreements between Plaintiff and Defendant Gorman.

24.    On information and belief, Plaintiff alleges that Defendant Gorman, after removing valuable files from Plaintiff's laptop, damaged components of the computer rendering it impossible for Plaintiff to recover the information and materials taken by Defendant Gorman or indeed to discover the full extent of Defendant Gorman's theft.

25.    Plaintiff alleges that Defendant Gorman converted and retained for his own personal use and benefit to the unlawful exclusion of Plaintiff, all of Plaintiff's above-described video footage and

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

still photographs along with the above-described intellectual and/or personal property created by and belonging to Plaintiff, residing in or on Plaintiff's computer systems (hereinafter, "Stolen Property").

26.    It was not until January 2008, when Plaintiff first learned of the existence of Defendants' documentary film entitled "*American Hero*," that Plaintiff discovered that Defendant Gorman had failed to return all copies of the raw video footage and had in fact retained the video footage and still photographs for Defendants' own improper use, benefit and profit.  It was at this time that Plaintiff reviewed the videodisks provided by Defendant Gorman and discovered that contrary to Defendant Gorman's representations the disks were incomplete.

27.    On information and belief, Plaintiff alleges that Defendant Gorman in association with Defendants Framebird, Beasley and Ellis, produced a documentary film about Plaintiff using Plaintiff's own raw video footage and still photographs.

28.    In an interview published in the *SF Weekly* on February 13, 2008, Defendant Gorman admits that the film *"American Hero"* was made without the approval of Plaintiff using the video footage shot by Plaintiff in Afghanistan.  A true and correct copy of the February 13, 2008 *SF Weekly* article is attached hereto as **Exhibit B**.

29.    Defendants' documentary film based on Plaintiff's raw and compiled video footage and still photographs was shown under the name *American Hero* at the *San Francisco Indie Film Festival* on February 17, 2008.

**FIRST CLAIM FOR RELIEF**
**(Against All Defendants for Copyright Infringement)**

30.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 29 above, as though fully set forth.

31.    Plaintiff is the owner of the copyrights to all of the raw and compiled video footage, a portion of which was incorporated into Defendants' documentary film without Plaintiff's authorization or consent.

32.    Plaintiff is the owner of the copyrights to the above-described still photographs, a portion of which were incorporated into Defendants' documentary film without Plaintiff's authorization or consent.

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INJUNCTION, SEIZURE, IMPOUNDMENT AND RETURN, ACCOUNTING TO RECOVER ROYALTIES AND PROFITS, UNJUST ENRICHMENT, BREACH OF CONTRACT, CONVERSION, VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, AND REPLEVIN

33.    On June 17, 2008, Plaintiff obtained registration of his copyrights to the compiled video footage shot by Plaintiff and his agents.  The copyright registration number for the compiled video footage is PAu003348109.  On June 30, 2008, Plaintiff obtained registration of his copyrights to the still photographs.  The copyright registration number for the still photographs is VAu000962682.

34.    Within the last three years, Defendants and each of them used Plaintiff's raw and compiled video footage and still photographs as the source material for a short documentary film entitled, alternatively, "*American Hero*" and "*For Love Of Country: American Hero.*"  A video clip featuring Plaintiff and made from Plaintiff's raw video footage is prominently featured on Defendant Framebird's website and has been so featured since late 2007 or early 2008.  Plaintiff is informed and believes and thereon alleges that the video clip as well as the full documentary film have been used in forums other than Defendant Framebird's website in an attempt to garner interest in the distribution of the film as well as for the production of a full length documentary using Plaintiff's video footage.

35.    Defendants infringed upon Plaintiff's copyrights in the raw and compiled video footage and still photographs by using such materials as the basis for the documentary film without authorization.  Upon information and belief, Defendants have disseminated the still photographs, film and excerpts of the raw and compiled video footage on multiple occasions.

36.    In undertaking the conduct complained of in this action, Defendants knowingly, intentionally, and willfully violated Plaintiff's copyrights.

37.    Except for the limited purposed described in the Letter of Intent, Plaintiff has not authorized Defendants to use any part or portion of the raw or compiled video footage and still photographs for any purpose whatsoever.

38.    Based upon Defendants' willful infringement, Plaintiff is entitled to actual damages and/or statutory damages.

39.    Plaintiff is also entitled to reasonable attorneys' fees and costs he has and/or will incur with respect to the infringement of the compiled video footage and still photographs subject to the registered copyright.

40.    The amount of damages shall be proven at the time of trial.

41.    Plaintiff has no adequate remedy at law.

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

6

**SECOND CLAIM FOR RELIEF**
**(Against All Defendants for Injunction)**

42.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 41 above, as though fully set forth.

43.    In the event that this Court finds that Plaintiff has not authorized Defendants to use, reproduce, sell, distribute, release in any way, recompile or otherwise make available either the raw or compiled video footage and still photographs, all Defendants should be permanently enjoined from reproducing and distributing the raw or compiled video footage and still photographs in any medium or device that embodies copyrighted materials in any way, shape or form.

44.    Plaintiff has not authorized Defendants to use any part or portion of the raw or compiled video footage or still photographs for any purpose whatsoever.

45.    Defendants have caused and continue to cause great injury to Plaintiff, which damage cannot be accurately computed, and unless this Court restrains these Defendants from further infringements of Plaintiff's registered copyrights, Plaintiff will suffer irreparable injury.

46.    Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**(Against All Defendants for Seizure, Impoundment and Return)**

47.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 46 above, as though fully set forth.

48.    Defendants have in their custody, possession and control Stolen Property, including *inter alia*, copies of Plaintiff's raw and compiled video footage and still photographs.

49.    Plaintiff has been denied access to the raw video footage for his own personal lawful use and benefit.

50.    In order to stop Defendants' continuing infringement, this Court should order, on terms it deems reasonable, the seizure, impoundment and return of all the Stolen Property, including *inter alia*, the raw and compiled video footage, as well as all materials infringing copyrights of Plaintiff.

51.    Plaintiff has not authorized Defendants to use any part or portion of the Stolen Property, including the raw or compiled video footage and still photographs, for any purpose whatsoever.

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

7

52.     Defendants' continued possession of the Stolen Property has caused and continues to cause great injury to Plaintiff, which damage cannot be accurately computed, and unless this Court restrains Defendants from further exploitation of Plaintiff's intellectual and/or personal property, Plaintiff will suffer irreparable injury.

53.     Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### (Against All Defendants for Accounting to Recover Royalties and Profits)

54.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 53 above, as though fully set forth.

55.     By virtue of Defendants' illegal, unlicensed, and unauthorized use and distribution of Plaintiff's Stolen Property, Defendants are required to pay Plaintiff damages and royalties measured in part by the profits (direct and indirect) that Defendants have received from their improper exploitation of Plaintiff's intellectual and/or personal property.

56.     Plaintiff is unable to determine the amount of money owed by Defendants unless Defendants furnish Plaintiff with an accounting.

57.     Once the accounting has been rendered and/or audit conducted of Defendants' books and records, this Court shall order disgorgement of profits attributable to Defendants' exploitation of Plaintiff's intellectual and/or personal property.

58.     Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### (Against All Defendants for Unjust Enrichment)

59.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 58 above, as though fully set forth.

60.     In the event that Defendants continue to exploit Plaintiff's intellectual and/or personal property in any way, including but not limited to, using the film to promote their business or future projects based on Plaintiff's intellectual and/or personal property, and/or selling, releasing or otherwise distributing the film incorporating Plaintiff's intellectual and/or personal property in any medium or venue, Plaintiff has conferred a benefit on Defendants.

8

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

61.    In the event that Defendants continue to exploit Plaintiff's intellectual and/or personal property, as noted above, Defendants have retained the benefit bestowed upon them by Plaintiff without adequately compensating Plaintiff therefor.

62.    Defendants should not in equity or good conscience be permitted to retain the benefit bestowed upon them by Plaintiff.

63.    As a result of the retention of the benefit, Defendants have been unjustly enriched and are jointly and severally liable to Plaintiff.

64.    As a result of the unjust enrichment of Defendants, Plaintiff has incurred damages in an amount to be determined at trial, plus applicable interest, attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
### (Against Defendants Gorman and/or Charlie Seven Films for Breach of Contract)

65.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 64 above, as though fully set forth.

66.    As noted above, on March 15, 2003, Plaintiff and Defendant Gorman by and through Gorman's business entity, Defendant Charlie Seven Films, entered into an agreement memorialized as the written "Letter of Intent" to work together to use Plaintiff's video footage and still photographs to produce a documentary film.

67.    Defendant Gorman and/or Defendant Gorman's business entity, Charlie Seven Films, breached this agreement when Defendant Gorman created, published and distributed the documentary film, "*American Hero*," without the authorization or consent of Plaintiff as required by the written Letter of Intent.

68.    Defendant Gorman and/or Defendant Gorman's business entity, Charlie Seven Films, breached this agreement when Defendant Gorman created, published and distributed the documentary film, "*American Hero*," without a final written agreement in place as required by the written Letter of Intent.

69.    Defendant Gorman and/or Defendant Gorman's business entity, Charlie Seven Films, further breached the written letter of intent when he created, published and distributed such documentary film for purposes other than those that the written Letter of Intent contemplated.

9

1    70.    At no point was Defendant Gorman excused from performance under the terms of the

2  written Letter of Intent.

3    71.    Plaintiff fulfilled all his duties and obligations under the written Letter of Intent.

4    72.    As a result of Defendant Gorman's willful and intentional breach of contract, Plaintiff

5  has incurred damages in an amount to be determined at trial.

6                         **SEVENTH CLAIM FOR RELIEF**
                  **(Against Defendant Gorman for Conversion)**
7

8    73.    Plaintiff incorporates by this reference each and every allegation contained in

9  paragraphs 1 through 72 above, as though fully set forth.

10    74.    On information and belief, Plaintiff alleges that Defendant Gorman entered Plaintiff's

11  residence without authorization and removed property belonging to Plaintiff. Such property included

12  the contents of computer files on Plaintiff's laptop, confidential, proprietary documentary and

13  electronic information relating to Plaintiff's business affairs, and Plaintiff's confidential work in

14  Afghanistan, copies of all writings and agreements between Plaintiff and Defendant Gorman, and

15  other items containing or consisting of intellectual and/or personal property created by and belonging

16  to Plaintiff and confidential personal data of Plaintiff.

17    75.    Plaintiff alleges that Defendant Gorman, after removing valuable files, property and data

18  from Plaintiff's laptop, damaged components of the computer rendering it impossible for Plaintiff to

19  recover the information and materials taken by Defendant Gorman or indeed to even ascertain the full

20  scope of the loss.

21    76.    The value of these files, intellectual and/or person property and privileged information

22  are impossible to determine at this time as Plaintiff has been denied access to such materials, but in any

23  case far exceed the jurisdictional limitation for conversion.

24    77.    Plaintiff alleges on information and belief that Defendant Gorman transported the stolen

25  files, intellectual and/or personal property and confidential data across state lines from New Mexico to

26  California.

27    78.    The aforementioned acts of Defendant Gorman were willful, oppressive, fraudulent

28  and/or malicious.

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

10

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

79.    As a result of Defendant Gorman's willful and intentional conversion of Plaintiff's computer files, intellectual and/or personal property and confidential data, Plaintiff has incurred damages in an amount to be determined at trial.

### EIGHT CLAIM FOR RELIEF
**(Against Defendant Gorman for Violation of Computer Fraud and Abuse Act)**

80.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 79 above, as though fully set forth.

81.    The Computer Fraud and Abuse Act, 8 U.S.C. § 1030 ("CFAA"), makes it unlawful for anyone to access a protected computer without authorization or in excess of authorized access and thereby obtain, alter or damage information or data. 18 U.S.C. § 1030(a)(2)(c). The CFAA also makes it unlawful to knowingly, and with intent to defraud, access a protected computer without authorization or in excess of authorization and thereby further the fraud and obtain anything of value.

82.    On information and belief, Plaintiff alleges that Defendant Gorman accessed Plaintiff's protected laptop computer without Plaintiff's authorization with the intent to defraud and remove information relating to Plaintiff's business affairs, his work in Afghanistan, copies of all writings and agreements between Plaintiff and Defendant Gorman, and other intellectual and/or personal property created by and belonging to Plaintiff.

83.    On information and belief, Plaintiff alleges that Defendant Gorman then damaged components of Plaintiff's laptop making it impossible for Plaintiff to access or recover the stolen information or to even ascertain the full scope of the loss. In any case the value of the loss exceeds the $5,000 jurisdiction threshold required by the CFAA.

84.    Plaintiff did not learn the extent of the property obtained of Defendant Gorman as a result of his unauthorized access of Plaintiff's invasion of his protected computer system until the publication of Defendants' documentary film.

85.    As a result of Defendant Gorman's willful and intentional actions, Plaintiff has incurred damages in an amount to be determined at trial.

///
///

11

## NINTH CLAIM FOR RELIEF
### (Against All Defendants for Replevin - Claim and Delivery)

86.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 85 above, as though fully set forth.

87.    Plaintiff is the rightful owner of the Stolen Property, including *inter alia*, the raw and compiled video footage and still photographs that Defendants are wrongfully withholding from Plaintiff, thereby preventing Plaintiff from taking possession of the intellectual and personal property owned by Plaintiff.

88.    As a result of Defendants' conduct, Plaintiff seeks the immediate return of the Stolen Property, including *inter alia*, the raw and compiled video footage and still photographs, as well as any personal property wrongfully retained by Defendants at any time.

## DEMAND

WHEREFORE, Plaintiff prays for judgment as follows:

FOR THE FIRST CLAIM FOR RELIEF:

1.    For an order from this Court declaring that Plaintiff holds all rights and interests in the raw and compiled video footage and still photographs and is the owner of the Stolen Property.

FOR THE SECOND CLAIM FOR RELIEF:

1.    For actual damages as proven at the time of trial, or in the alternative for statutory damages against Defendants, and each of them.

2.    For an award of attorneys' fees and costs.

FOR THE THIRD CLAIM FOR RELIEF:

1.    For an injunction restraining and enjoining Defendants from using, distributing, publishing or otherwise exploiting Plaintiff's Stolen Property, including *inter alia*, any intellectual and/or personal property embodied in both the raw and complied video footage and still photographs.

FOR THE FOURTH CLAIM FOR RELIEF:

1.    For an injunction mandating that Defendants deliver to Plaintiff any and all copies of Plaintiff's Stolen Property, including *inter alia*, any intellectual and/or personal property embodied in both the raw and complied video footage and still photographs.

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

12

2.    For an injunction mandating that Defendants return any and all copies of any sort that contain or embody Plaintiff's Stolen Property, including *inter alia*, any intellectual and/or personal property.

FOR THE FIFTH CLAIM FOR RELIEF:

1.    For a complete accounting and disgorgement of profits attributable to Defendants' exploitation of Plaintiff's Stolen Property.

FOR THE SIXTH, SEVENTH, AND EIGHTH CLAIMS FOR RELIEF:

1.    For damages according to proof, plus interest at the legal rate.

FOR THE NINTH CLAIM FOR RELIEF:

1.    The immediate return of the Stolen Property, including *inter alia*, the raw and compiled video footage and still photographs, as well as any personal property wrongfully withheld and impounded by Defendants at any time.

FOR ALL CLAIMS FOR RELIEF:

1.    For damages according to proof, plus interest at the legal rate;

2.    For an award of attorneys' fees and costs; and

3.    For such other and further relief as the Court deems just and proper.

DATED:  July 18, 2008

Respectfully submitted,

HAMMOND LAW

By: _____
STEVEN L. HAMMOND
Attorneys for Plaintiff
GREGORY SHADE

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

13

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INJUNCTION, SEIZURE, IMPOUNDMENT AND RETURN, ACCOUNTING TO RECOVER ROYALTIES AND PROFITS, UNJUST ENRICHMENT, BREACH OF CONTRACT, CONVERSION, VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, AND REPLEVIN

# EXHIBIT A

# Charlie Seven Films LLC

### Letter of Intent

For good and valuable consideration, receipt of which is hereby acknowledged I authorize **Charlie Seven Films LLC (Daniel Gorman)** to make use of my appearance and to use all video footage and stills provided for the following production provisionally titled (temporary title) _____ ("**Program**") and in connection with Charlie Seven Films LLC.

Content will be mutually agreed upon by Greg Shade and Daniel Gorman, with final approval by both parties.

All production alluded to in the above paragraphs will be used for a network documentary film which will be owned in equal parts by **Greg Shade, and Daniel Gorman**, with all production done by **Charlie Seven Films LLC**, who will oversee any and all employment in relation to production.

The documentary will be produced and used along with other materials including News interviews, magazine article write-ups, newspaper articles and the like, to procure funding for a feature film, in which **Greg Shade and Daniel Gorman** will be partners.

This agreement demonstrates good faith intent between the two parties (Greg Shade) and (Daniel Gorman) until a full and comprehensive contract is drafted and signed by both parties within one week of the signing of this document.

1/15/2003

(Please Print) NAME: _Geo Shade_ ————— _Gregory O Shade_

(Please Print) NAME: _____ _Daniel Gorman_
SIGNATURE

3/15/2003

SIGNATURE

**4518 Coal Ave SE**
**Albuquerque, NM, 87108**
**505-463-3491**
**Daniel@kausfx.com**

# EXHIBIT B

San Francisco › News › Osama Hunter Greg Shade Captured on IndieFest Doc American Hero



SF Weekly

News | Blogs | Restaurants | Calendar | Music | Movies | Arts | Best Of | Classified | Promotions | Search | Ad In

write to the editor | email a friend | print article | Write Your Comment

# Osama Hunter Greg Shade Captured on IndieFest Doc *American Hero*

By Ashley Harrell

Published: February 13, 2008



Greg Shade is gunning for terrorists.

**Subject(s):** Ashley Harrell on terrorist fighter

The *New York Post* called Greg Shade a "daring Yank." Republican Congressman Dana Rohrabacher, a longtime friend, told CBS that Shade was the "Wild Bill Hickok of the frontier." The *Wall Street Journal* described him as "untiringly practical" and "a lone idealist." But Shade — a wealthy real-estate investor who in 2001 traveled to Afghanistan to hunt down Osama bin Laden — is, um, *different* from how he's been portrayed, says San Francisco filmmaker Daniel Gorman.

Gorman's short film about Shade, *American, Hero*, has its world premiere at the S.F. Indie Film Festival on Feb. 17. It's a film that Shade probably doesn't want you to see.

Shade — a 6-foot-4 bear of a man with a thick salt-and-pepper beard – was living in New Mexico in 2002, just after he had returned from his mission in Afghanistan. He had filmed himself riding on camelback through Taliban-controlled territory, distributing thousands of "wanted" posters and T-shirts identifying

http://www.sfweekly.com/2008-02-13/news/osama-hunter-greg-shade-captured-on-indiefest-doc-american-hero/full (1 of 4) [4/24/2008 10:05:46 AM]

## Most Popular

Most Viewed | Most Commented | News

- **Gonzalez/Nader Hysteria**
  They're actually out to stop spoiler candidates.
- **Building Racism**
  Segregation and racism are used to pit black and Latino carpenters against each other at a low-income-housing site
- **SF Supervisor Aaron Peskin's Message to Newsom: Quit Attacking Me!**
- **Free Parking for Sale**
  Many say homeless guys who help commuters find street parking provide a valuable service. But others complain that they cause trouble.
- **Saul Williams Teams with Trent Reznor, Bucks Industry**

"Most Popular" tools sponsored by: COMCAST

---

More HD.
More than satellite.
More than anyone.

COMCAST

### Blogs

- **Relax with a Violent Video Game**
  01:32PM 04/04/08
- **Spend Saturday Chillin' with Fashion Designers at 111 Minna**
  01:17PM 04/04/08
- **Blue in the Bay: Dodgers Edge Giants in Season Opening Series**

---

Search    Search

Advanced Archive Search >>

## SF Weekly Insiders

- Local food, music and news blasts
- Free Stuff

Subscribe

E-Mail Address    Go

backpage.com

buy, sell, trade (5,481)
musician (568)
rentals (2,034)
jobs (5,964)
adult entertainment (2,263)

San Francisco - News - Osama Hunter Greg Shade Captured on IndieFest Doc American Hero

terrorists such as **Osama** bin Laden.

"If you see these people, you want to catch 'em," Shade tells a group of laughing villagers in the film. "You want to grab 'em. If they try to get away, you shoot 'em."

Shade's wife, Roxanne, found Gorman's film editing business in the phone book and had him make copies of Dan Rather reporting Shade's story on CBS in 2002. Shade then asked for help editing nineteen hours of footage he shot in Afghanistan with the intention of creating a 20-minute documentary to show to Congress (Gorman isn't sure what Shade hoped to achieve). They enlisted a screenwriter, Chip Beasely, and started negotiations with a producer from the Discovery Channel.

While working on the project, Gorman visited Shade's home in Rio Rancho, which included a large shower fully encased in a fish tank and mosaic floor tiles arranged in the outline of a naked, large-breasted, spread-eagled woman. "At that point, I thought he was just eccentric," says Gorman, who splits his time between Sebastopol and San Francisco. It was when the two men traveled to Washington, D.C., to visit members of Congress, that things began to get really bizarre.

When Gorman arrived at their hotel room, Shade was "absolutely loaded," Gorman remembers. Shade also expressed concern that the CIA was watching them. Then he suggested they go to a strip club.

The next day, the two went to Capitol Hill and distributed copies of an initial version of their film to several congressmen. Shade told Gorman he'd see him later, because he had an underground meeting with the CIA. Eye scanners were apparently involved. "He felt he was a James Bond character," Gorman says.

---

**01:08PM 04/04/08**

**Breaking Up: Now Even More Awkward And Painful!**
**12:51PM 04/04/08**

**'In Loving Memory of Cheese: 1981 - 2006'**
**11:26AM 04/04/08**

**Ritual Roaster Barista Named The Best In The West**
**10:55AM 04/04/08**

---

Be Social

---

What are we writing about

Ace in the Hole Alejandro Jodorowsky
American Pie Best games of 2007
Blade Runner Bloated box sets by...
Bow Wow by Ben Westhoff Brad Pitt Collette by Tamara Palmer
David Mamet Eastern Promises Fort Knox Five by Palmer
global warming Hts. Golden Messenger... Jim Ridley on The...
John Ford Judith Lewis on There... Kid Sister by Ernest...
Knocked Up Lost Odyssey New Restaurants
Nosferatu PlayStation Scream by Darren Keast Superbad
The Gathering's 16th... Twin Peaks Van Halen live by... Wii
Xbox

---

Recent Articles

**Recent Articles By Ashley Harrell**

- **Free Parking for Sale**
  Many say homeless guys who help commuters find street parking provide a valuable service. But others complain that they cause trouble.
- **New Planning Director's Beau, Lance Farber, Sought by Washington Health Officials**
- **Dancing Mime Gets Kicked Off the Golden Gate Bridge**

---

National Features

Miami New Times

**The Murder of Master Do**
In a city plagued by killings, the most perplexing death is that of a killer.
ByTamara Lush

---


www.politeed.com

Personal of the Day

1trvlnman
Song or album that puts me in the mood:
"Nothing quite like a lil

San Francisco - News - Osama Hunter Greg Shade Captured on IndieFest Doc American Hero

Over the next four days in D.C., Gorman filmed Shade in their hotel room for the Discovery Channel documentary. But problems soon arose. Shade, an editing novice, had impossible demands for how the film should look. The two butted heads over musical selection (Shade was in favor of using songs such as Rod Stewart's "Forever Young"). It ended badly, Gorman says, with Shade telling Gorman that the CIA would rape Gorman's wife and kill him. Although Gorman is unmarried, he decided Shade was unstable and cut off the relationship.

Gorman put his film on the back burner for several years, until a friend suggested he make it into a short documentary and enter it in the S.F. Indie Film Festival. Though he questioned the ethics of doing so without Shade's approval, Gorman ultimately decided Shade's story was too important not to be told. He was mad that politicians like Rohrabacher and reporters were championing the efforts of a potentially homicidal madman.

*SF Weekly* was unable to reach Shade for comment. However, a journalist he befriended in Uzbekistan last year called on his behalf. Melik Kaylan, a freelance culture writer for the *Wall Street Journal*, said he had heard from one of Shade's realtors that the *Weekly* was trying to contact Shade. Shade is out of the country on a secret mission, possibly in Burma, Kaylan said, and apparently cannot be reached. A story about him (or a documentary, for that matter) might endanger his life, Kaylan continued, in an obvious attempt to dissuade me from writing the story.

Kaylan isn't the only one with a soft spot for Shade. Gorman acknowledges that Shade seemed like an intelligent, entertaining guy with the best of intentions. "He's the type of person you make a film *about*. You don't work on a documentary film *with* him. I learned that the hard way."

Gorman worries that Shade might hurt himself or somebody else. In one particularly telling scene in the film, a shirtless Shade discloses from his hotel bed that he's disappointed that the U.S. Army hasn't shut down heroin operations in Afghanistan. He thinks aloud about how they would look "like stupid fuckers" if he were to do his "duty."

"He goes himself and fuckin' murders all the bad guys," Shade says, sounding serious. "Kills 'Taliban right and left. Stops heroin production that adds up to a billion dollars a year. That's a nice way to end it."

**Nashville Scene**
Spank the Honkey
The victim of a racial slur exacts a special kind of retribution.
By P.J. Tobia

**Broward-Palm Beach New Times**
Spring Break is Still Awesome
Try as it might, Ft. Lauderdale still can't shake America's diehard partiers.
By Michael J. Mooney

bawm-chika-bawm-bawm. Kidding."
More Personals >>

**NOW CLICK THIS**
- Digital Jukebox
- The Showdown at SXSW
- SF Weekly Spaces
- CHECK OUT ARTOWRK FROM SF WEEKLY'S ARTOPIA


SF WARFIELD
click here for concert info

backpage.com
Smith machine
Adorable AKC Purebred
Beautiful Maltese 8 Weeks
Puppies - Shot Record,
Purebred Paper & Puppy Kit
Great Danes- variety
colors-health guaranteed
Yorkies, Maltese and
Yorkie Mix puppies WWW.YOURPUP.COM
More buy, sell, trade ads

BizRate
- Nikon d50s
- Polaroid Digital Cameras
- Nextel Cell Phones
- Compaq Presarios
- Fuji Finepix

foam-order.com
- Memory Foam Mattress
- Cushions
- Tempur-Pedic Mattress
- Folding foam
- Neoprene

San Francisco > News > Osama Hunter Greg Shade Captured on IndieFest Doc American Hero

Write Your Comment



SATURDAY 04.26.08

THE SHAPESHIFTERS

UK'S #1 HOUSE MUSIC ACT    WITH FRENCHY LE FREAK >> bjorn nicklas

About Us | Work for SF Weekly | Esubscribe | Free San Francisco Classifieds | National Advertising | Privacy Policy

Problem With the Site? | RSS | Site Map

©2008 Village Voice Media All rights reserved.

sfweekly.com