1  STEVEN L. HAMMOND (State Bar No. 220521)
   E-mail: *slh@hammondlawsf.com*
2  PETER J. PARISOT (State Bar No. 214622)
   E-mail: *Parisot@hammondlawsf.com*
3  HAMMOND LAW
   One Ferry Building, Suite 350
4  San Francisco, CA 94111
   Telephone:   (415) 955-1915
5  Facsimile:   (415) 955-1976

6  Attorneys for Plaintiff
   GREGORY SHADE

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11 GREGORY SHADE,                          CASE NO. CV 08-03471 SI

12         Plaintiff,                      **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

13    v.

14 DANIEL PATRICK GORMAN, individually
   and doing business as CHARLIE SEVEN     Date:    October 10, 2008
15 FILMS, LLC, FRAMEBIRD MEDIA, CHIP       Time:    9:00 a.m.
   R. BEASLEY, and ANDREW ELLIS,           Dept.:   Courtroom 10
16                                         Judge:   Hon. Susan Illston
           Defendants.
17                                         Action Filed: July 18, 2008

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 10, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiff Gregory Shade ("Plaintiff"), by and through undersigned counsel, will and hereby does move this Court for a preliminary injunction against Defendants Daniel Patrick Gorman ("Gorman"), individually and doing business as Charlie Seven Films, LLC, ("Charlie Seven Films"), Framebird Media ("Framebird"), Chip R. Beasley ("Beasley") and Andrew Ellis ("Ellis") (collectively, "Defendants"), pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

This motion is made on the ground that Plaintiff will suffer irreparable harm unless Defendants are enjoined from exhibiting or offering for distribution a certain documentary film, entitled "*American Hero*," that unfairly and without authorization utilizes copyrighted material owned by Plaintiff. Such use is in violation of Plaintiff's copyrights under the Copyright Act, 17 U.S.C. § 501 *et seq.*, and other applicable laws. Plaintiff requests that this Court enter a preliminary injunction as set forth in the proposed order filed concurrently herewith.

This motion is supported by the following Memorandum of Points and Authorities, the accompanying papers and all pleadings and records on file in this action and any other argument and evidence presented to the Court at or before the hearing on this motion.

DATED: July 24, 2008

Respectfully submitted,

HAMMOND LAW

By: _____
STEVEN L. HAMMOND
Attorneys for Plaintiff
GREGORY SHADE

## MEMORANDUM OF POINTS AND AUTHORITES

### I. INTRODUCTION

Plaintiff is the owner of certain video footage shot by Plaintiff and his agents. The copyright registration number for such footage is PAu003348109. Plaintiff is also the owner of a number of copyrighted still photographs shot by Plaintiff and his agents. The copyright registration number for the still photographs is VAu000962682. True and correct copies of the file-endorsed copyright registrations are attached to the Declaration of Greg Shade ("Shade Decl."), ¶ 2 as **Exhibits A and B,** respectively.

In January 2008, Plaintiff discovered that Defendants incorporated his copyrighted materials (both compiled video footage and still photographs) and other intellectual property without his authorization or consent to create a "documentary film" known to Plaintiff variously as "*American Hero*" and/or "*For Love Of Country.*" Plaintiff now seeks to enjoin Defendants from displaying, broadcasting, distributing, retaining, and in any way using Plaintiff's copyrighted materials and intellectual property.

### II. STATEMENT OF FACTS

As noted above, Plaintiff is a resident of New Mexico and the owner of copyrighted video footage and still photographs obtained during his time in Afghanistan, Uzbekistan, Tajikistan, Turkmenistan and Pakistan in addition to other Central Asian countries following the events of September 11, 2001. Shade Decl., ¶ 1. All footage was obtained at a risk of great personal peril and at great expense to Plaintiff. Plaintiff estimates that he spent over $50,000 in out of pocket costs to obtain such video footage and still photographs. Shade Decl., ¶ 1.

In early 2003, Plaintiff decided to turn the footage obtained in Central Asian into a film or other format for future commercial use. Accordingly, Plaintiff entered into an agreement with Defendant Gorman by and through Defendant Gorman's business entity known as Charlie Seven Films, in 2003 to produce a documentary film using Plaintiff's raw video footage. This agreement was later reduced into writing on or around March 15, 2003. Shade Decl., ¶ 4, Exhibit C.

Specifically, the Letter of Intent states that Plaintiff authorized "Charlie Seven Films, LLC (Daniel Gorman) to make use of [Plaintiff's] appearance and to use all video footage and stills

provided…" for the proposed documentary film. Shade Decl., ¶ 4. Furthermore, the letter of intent states that "[c]ontent will be mutually agreed upon by Greg Shade and Daniel Gorman, with final approval by both parties." Shade Decl., ¶ 5, Exhibit C. However, for various reasons, Plaintiff was dissatisfied with each and every scenario presented by Defendant Gorman. Shade Decl., ¶ 6.

Plaintiff initially hired and paid Defendant Gorman to compile and edit the raw video footage provided by Plaintiff into a shorter version for other uses. Shade Decl., ¶ 6. In the scope and course of this engagement, Defendant Gorman compiled, as a work for hire, an edited version of the raw footage that was approximately four hours in length ("compiled video footage"). Shade Decl., ¶ 6. In the course of this engagement, Plaintiff allowed Defendant Gorman access to Plaintiff's still photographs which were taken contemporaneously with the raw video. Shade Decl., ¶ 6.

Ultimately, Plaintiff and Defendant Gorman were unable to reach an agreement on the final content of the proposed documentary film. Shade Decl., ¶ 7. In or about April 2003, Plaintiff terminated all of his business dealings with Defendant Gorman. Shade Decl., ¶ 7. In or about April 2003, Plaintiff demanded the return of all copies of the twenty plus hours of raw video footage as well as any copies of the still photographs and in so doing withdrew his authorization for Gorman and/or Charlie Seven Films to use such materials for any purpose. Shade Decl., ¶ 7.

In response to such demand, Defendant Gorman turned over a number of digital videodisks, which he represented was the entirety of Plaintiff's video footage. Shade Decl., ¶ 8. Plaintiff, relying on Gorman's representations, did not learn until January of 2008 that the digital videodisks contained only the four hours of compiled footage. Shade Decl., ¶ 8. Unbeknownst to Plaintiff, Defendant Gorman had surreptitiously retained copies of the raw video footage as well as the compiled and edited footage and an undetermined number of still photographs without Plaintiff's authorization or consent. Shade Decl., ¶ 8.

Around the same time, Defendant Gorman requested Plaintiff's permission to use Plaintiff's personal computer to finish the transfer of files as Defendant Gorman represented that his was no long working. As a result, Plaintiff gave Defendant Gorman permission to enter Plaintiff's vacation home to utilize his personal computer. During such time, Defendant Gorman removed property and/or copies of property belonging to Plaintiff from the home without Plaintiff's

authorization and consent. Shade Decl., ¶ 9. Specifically, Gorman removed computer files from Plaintiff's computer, as well as confidential, proprietary documentary and electronic information relating to Plaintiff's business affairs and confidential work in Afghanistan, and copies of all writings and agreements between Plaintiff and Defendant Gorman. Shade Decl., ¶ 9.

It was not until January 2008, when Plaintiff first learned of the existence of Defendants' documentary film entitled "*American Hero*," that Plaintiff discovered that Defendant Gorman had failed to return all copies of the twenty plus hours of raw video footage and had in fact retained the video footage and still photographs for Defendants' own improper use, benefit and profit. Shade Decl., ¶ 10. At that time, Plaintiff reviewed the videodisks provided by Defendant Gorman for the first time and discovered that the disks were incomplete and that Defendant Gorman's representations had been false. Shade Decl., ¶ 10.

In an interview published in the *SF Weekly* on February 13, 2008, Defendant Gorman admits that the film was made without the approval of Plaintiff using the footage shot by Plaintiff in Afghanistan. Shade Decl., ¶ 11, Exhibit D.

Defendants' documentary film based on Plaintiff's raw and compiled video footage and still photographs was shown under the name *American Hero* at the *San Francisco Indie Film Festival* on February 17, 2008. Shade Decl., ¶ 12. A video clip as well as the full documentary film have been used to garner interest in the distribution of the film as well as for the production of a full length documentary using Plaintiff's video footage.

### III. PROCEDURAL POSTURE

Plaintiff filed his complaint for copyright infringement among other claims on July 18, 2008. Concurrently therewith Plaintiff filed this motion and its supporting papers.

### IV. ISSUES TO BE DECIDED

1. Whether Plaintiff is likely to succeed on his claim that Defendants' use of the compiled video footage and still photographs in the documentary film "*American Hero*" constitutes willful infringement of Plaintiff's copyrights in violation of the Copyright Act, 17 U.S.C. § 501.

2. Whether Plaintiff will suffer irreparable injury if Defendants' conduct is not enjoined.

## V. ARGUMENT

### A. Preliminary Injunction Standard

"The function of a preliminary injunction is to maintain the status quo ante litem pending determination of the action on the merits." *Washington Capitols Basketball Club v. Barry*, 419 F.2d 472, 476 (9th Cir. 1969). The moving party is entitled to a preliminary injunction if it establishes either:

    (1)    a combination of probable success on the merits and the possibility of irreparable harm, or

    (2)    that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor.

*Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987); *California Cooler v. Loretto Winery*, 774 F.2d 1451, 1455 (9th Cir. 1985); *see also*, *Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975); *County of Alameda v. Weinberger*, 520 F.2d 344, 349 (9th Cir. 1975).

The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987) (quoting *San Diego Comm. Against Registration and the Draft v. Governing Board of Grossmont Union High School Dist.*, 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)). To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor. *Rodeo Collection, Ltd.*, *supra*, 812 F.2d at 1217.

Moreover "[a] showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm." *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995). A party showing a reasonable likelihood of success on the merits of a copyright infringement claim is thus normally entitled to a preliminary injunction. *Id.*

Finally, in appropriate cases, the Court should also consider whether injunctive relief would serve the public interest. *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993).

HAMMOND LAW
ONE FERRY BUILDING, SUITE 350
SAN FRANCISCO, CALIFORNIA 94111

5   Case No. CV 08-03471 SI
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### 1. Plaintiff Is Likely To Succeed on the Merits of His Infringement Claims

Copyright infringement exists when any of the rights granted under 17 U.S.C. § 106 are violated. *Buck v. Jewell-La Salle Realty,* 283 U.S. 191 (1931). Title 17 U.S.C. § 106(3) grants a copyright holder the exclusive right to distribute, and to authorize distribution of, its copyrighted work. "To establish copyright infringement, Plaintiff must establish both ownership of the copyright and copying of an expression protected by the copyright." *Triad Systems,* 64 F.3d at 1335. Here, there is direct evidence of infringement because Defendants' film actually contains Plaintiff's copyrighted material and Defendants have so conceded that the film footage and still photographs belong to Plaintiff.

However, even if direct evidence of copying was not available[1], Plaintiff would be able to establish copying by a showing of circumstantial evidence of: (1) defendant's access to the copyrighted work prior to the creation of defendant's work, and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work. *See, Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). Both of these elements are established here. Absent evidence of access, a "striking similarity" between the works may give rise to a permissible inference of copying. *See, Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984); *Schultz v. Holmes*, 264 F.2d 942 (9th Cir. 1959); Nimmer § 13.02[B] at 13-14 (1986). As is demonstrated below, Plaintiff can easily establish each and every element required to show that he will succeed on the merits of his infringement claim.

### a. Plaintiff Is The Undisputed Owner Of The Valid Copyrights To Both The Video Footage and Still Photographs Incorporated Into The Film

As described above, Plaintiff is the owner to the valid copyrights to both video footage and still photographs a portion of which were incorporated into the Defendants' documentary film without Plaintiff's authorization or consent. Shade Decl., ¶ 2, Exhibits A and B. Plaintiff's video footage and still photographs consist of original material which constitutes properly copyrightable

---

[1] Defendants' wholesale incorporation of Plaintiff's copyrighted material constitutes direct evidence of actual copying, however, Plaintiff presents the alternative tests for determining substantial similarity.

subject matter under 17 U.S.C. § 102. Defendant Gorman directly copied Plaintiff's copyrighted video footage and still photographs when he incorporated the material into his documentary film. The remaining Defendants are either directly or contributorily liable because they encouraged and provided the resources for Defendant Gorman's known infringing activity, *i.e.*, the distribution and display of the infringing materials on the Framebird Media website. *See*, *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (providing site and facilities for known infringing activities establishes contributory liability for copyright infringement); *Sega Enterprises, Ltd. v. MAPHIA*, 948 F.Supp. 923, 932 (N.D. Cal. 1996). Here, the evidence presented conclusively establishes that Defendant Gorman knew that the source material used in the creation of his infringing work was owned by Plaintiff and even conceded that it was "unethical" for him to use such source materials without Plaintiff's authorization and consent.

        **b.**      **Defendant Gorman Had Access To The Copyrighted Material**

It is undisputed that Defendant Gorman had access to the copyrighted materials and Defendant Gorman concedes that his use of the materials was unauthorized. The Letter of Intent signed by both Plaintiff and Defendant Gorman clearly evidences and demonstrates Plaintiff's initial authorization of "Charlie Seven Films, LLC (Daniel Gorman) to make use of [Plaintiff's] appearance and to use all video footage and stills provided…" for the proposed documentary film. Shade Decl., ¶ 5, Exhibit C. Plaintiff's authorization was subsequently revoked when he demanded the return of all of his intellectual property from Defendant Gorman in 2003, a fact which Defendant Gorman readily conceded in his *SF Weekly* interview. As a result, any further use of the material was and continues to be prohibited and unauthorized.

        **c.**      **The Infringing Material Is Identical To Plaintiff's Copyrighted Material**

To prove infringement, a plaintiff must show that the works are substantially similar in both ideas and expression. *Krofft*, 562 F.2d 1157 at 1164. Substantial similarity is usually an extremely close issue of fact. *See*, *Twentieth Century-Fox Film Corporation v. MCA, Inc.*, 715 F.2d 1327, 1330, n. 6 (9th Cir.1983). In this case, there can be no dispute that the material is "substantially similar." In fact, Defendants engaged in the wholesale appropriation of Plaintiff's copyrighted

material without Plaintiff's authorization or consent. Shade Decl., ¶ 13, Exhibit E and Exhibit F respectively. Also attached to Shade Decl., ¶ 13 as **Exhibit G** is a matrix comparing the location of the infringing material on the documentary to the location of the <u>identical</u> material on the videodisks deposited with the U.S. Copyright Office.

### 2. Plaintiff Is Entitled To Presumption Of Irreparable Harm

As Plaintiff can that demonstrate a likelihood of success on the merits of his copyright infringement claim, he is entitled to a presumption of irreparable harm. *See*, *Cadence Design Systems v. Avant! Corp.*, 125 F.3d 824, 826-27 (9th Cir. 1997), *cert. denied*, 118 S. Ct. 1795 (1998). That presumption means that "the balance of hardships issue cannot be accorded significant" – if any – "weight in determining whether a court should enter a preliminary injunction to prevent the use of infringing material in cases where . . . the plaintiff has made a strong showing of likely success on the merits." *Id.* at 830.

### B. Balance of Hardships Tips In Plaintiff's Favor

If this court determines that no such presumption exists, then the Court may also balance the potential hardships that each party may suffer if the Court grants or denies Plaintiff's motion. *International Jensen*, supra, 4 F.3d at 819 at 827. In the case at hand, the balance of hardship tips heavily in Plaintiff's favor. If Defendants are allowed to use the unauthorized footage, Plaintiff may not be able to market such materials on his own.[2] Plaintiff still has plans to convert his footage into a useable format (*i.e.*, either a documentary film or informational program). As noted above, the video footage and still photographs were obtained by Plaintiff at risk of great personal peril and financial cost. It would simply be inequitable to allow Defendants to use the fruits of this labor at the expense of Plaintiff.

/ / /

---

[2] Plaintiff's story of his work in Afghanistan was so noteworthy that the CBS Corporation news program, *60 Minutes*, broadcast a segment featuring Plaintiff and his work, fighting terrorists, on national television. Moreover, Plaintiff has been profiled in a number of prominent newspapers and journals ranging from the *New York Post* to *The Wall Street Journal* for his courageous efforts in the war on terror and his attempts to bring Osama bin Ladin to justice.

### C. Injunctive Relief Would Serve The Public Interest

Traditionally, courts have looked to public policy considerations in determining whether to grant preliminary injunctive relief. *Chalk v. United States Dist. Court, Cent. Dist. of Cal.*, 840 F.2d 701, 711 (9th Cir., 1988) ("We recognize that the public interest is one of the traditional equitable criteria which a court should consider in granting injunctive relief."). In this case, Defendants are anticipated to argue that they have a First Amendment right to develop their documentary. However, their right to free speech does not permit them to circumvent Plaintiff's copyrights. The Copyright Clause of the United States Constitution authorized Congress to grant "for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Constitution, Article I, § 8, clause 8. Such protections were embodied in Title 17 U.S.C. § 106(3) which provides that the owner of a copyright has "the exclusive rights . . . to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Allowing Defendants to circumvent this clause would undermine its explicit purpose "to promote the progress of science and useful arts" as well as the promise of financial reward to motivate individuals to produce art, music, literature, scholarship, and scientific innovation."

### VI. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court issue the preliminary relief requested.

DATED: July 24, 2008               Respectfully submitted,

                                   HAMMOND LAW

                                   By: /s/ Steven L. Hammond
                                   STEVEN L. HAMMOND
                                   Attorneys for Plaintiff
                                   GREGORY SHADE